*1008 OPINION.
Arundell:
These cases present facts which, up to a certain point, are similar to those in R. G. Hubbard, 2 B. T. A. 1287, and William E. Fulton et al., 15 B. T. A. 1018. In both of those cases corporate assets were set aside and placed in the hands of trustees to be liquidated and the proceeds were to be paid over to the stockholders. In the Fulton case, as in this, there was a period following the transfer of the assets to trustees during which those assets were held primarily as a guarantee against any shortage that might develop in other property which had been transferred to the merged corporation. In both the Hubbard and Fulton cases we held that the turning over of certain assets to the trustees for the ultimate benefit of stockholders constituted a declaration of a dividend by the corporation and that the distributions made by the trustees were taxable as dividends to the stockholders in the year in which the distributions are made. Petitioners, citing the above cases, contend that their cases should be decided the same way and that as the amounts distributed represented income accrued to the Knickerbocker Trust Co. prior to March 1, 1913, they are exempt from tax under section 201 of the Revenue Act of 1921. As said above, the several cases are analogous up to a certain point. The point of departure is that in the Hubbard and Fulton cases the proceeds of the assets set aside were distributable and were distributed to stockholders of the corporation which had declared the dividend, whereas here the proceeds were payable to holders of the so-called beneficial certificates *1009 who might or might not be stockholders. Had the proceeds of the trusteed property in these cases been payable only to stockholders of the Knickerbocker Trust Co. we might have occasion to consider and dispose of petitioners’ claims based on the theory that the property they received in 1922 represented dividends, but our view is that as a result of the issuance of the beneficial certificates and allowing them to pass into the hands of others the distributions thereafter made lost the character of dividends.
When the dividend was declared in 1912 by the setting aside of property, the relation of debtor and creditor was created between the corporation and its stockholders. The right to receive the amount that would ultimately be paid under the declaration in 1912 was evidenced by the beneficial certificates issued, which the evidence indicates Avere assignable, and the holders of such certificates were entitled to collect the debt evidenced by them independently of any stock ownership. Accordingly, when distributions were made to certificate holders, to the extent that the distributions were greater than cost or March 1, 1913, value, as the case may be, the holders realized a gain, and, conversely, if the amounts received were less than the basic figure the holders suffered a loss. The process of liquidating the certificates is thus seen to be a transaction falling under the gain or loss provisions under section 202 of the Kevenue Act of 1921 rather than under section 201 relating to dividends.
The respondent included in income of the petitioners securities distributed to them at the amounts at which petitioners entered them in their books of account and which were less than the face value of the securities. There is no evidence to show that the figures so used were too high. The problem presented, then, is that of determining the basis prescribed by section 202 — that is, cost or March 1, 1913, value of the certificates. As to this the evidence is insufficient. In the case of Louie S. Allen it appears that all of her certificates were acquired after 1913, and while the prices she paid for several blocks bought at various dates are shown, her holdings fluctuated and we are unable to determine the cost of those held in 1922. Benjamin L. Allen acquired some certificates before March 1, 1913, but neither the number nor their value on that date is shown. Nor is there evidence as to whether at the time of the distribution in 1922 he still held any of the certificates acquired at the time of the merger. In his case, as in that of Mrs. Allen, the cost of the certificates acquired after March 1, 1913, and held at the time of distribution is not shown. Lacking-evidence on these points, we are unable to say that the respondent erred in using the figures he did.
One of the arguments made by petitioners is that they were beneficiaries of an express trust and that the tax must be determined under section 219 of the Kevenue Act of 1921. What we have said *1010 above indicates our view on this contention. In our opinion the arrangement whereby certain assets of one of the merging companies were set aside for the purposes declared in the merger did not create such a trust as is contemplated by section 219.

Decision will be entered, for the respondent.